# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., as Broadcast Licensee of the May 3, 2014 Floyd Mayweather, Jr. v. Marcos Rene Maidana WBC Welterweight Championship Fight Program, <br><br>*Plaintiff*, <br><br>v. <br><br>EFRAIN OLIVARES BERMUDEZ a/k/a EFRAIN O. BERMUDEZ, individually, and d/b/a CASA GUADALAJARA BAR & GRILL a/k/a CASA GUADALAJARA BAR AND GRILL, <br><br>*Defendant*. | § § § § § § § § § § § § § § § § | Civil Action No. SA-17-CV-387-XR |

## ORDER

On this date, the Court considered Plaintiff's Motion for Default Judgment in the above-captioned case. Docket no. 8. After careful consideration, the Court will GRANT Plaintiff's Motion.

## BACKGROUND

Plaintiff J&J Sports Productions, Inc. ("Plaintiff") is a broadcast license company that was "exclusively authorized to sub-license a closed-circuit telecast" of the May 3, 2014, Floyd Mayweather, Jr. v. Marcos Rene Maidana WBC Welterweight Championship Fight Program and its preliminary bouts (the "Event") throughout Texas. Docket no. 1 at 2. The Event could be legally exhibited by a commercial establishment only by contractual authorization from Plaintiff. *Id*. Transmission of the Event was via satellite, and electronically coded (or "scrambled") to prevent unauthorized access. *Id* at 3. The only way to clearly telecast the Event was with electronic decoding equipment. *Id*. Establishments receiving contractual authorization from

1

Plaintiff would receive "the electronic decoding capability and/or satellite coordinates necessary to receive the signal[,]" allowing clear broadcast of the Event. *Id*.

Defendant Efrain Olivares Bermudez, d/b/a Casa Guadalajara Bar & Grill ("Defendant"), a Texas resident, owned and/or operated the Casa Guadalajara Bar & Grill, located at 2623 Loop 410 N.E., San Antonio, TX 78217 (the "Establishment") on the date of the Event. *Id.* at 1–2. Plaintiff alleges that on May 3, 2014, Defendant, by satellite transmission or unauthorized receipt over a cable system, and without contractual authorization from Plaintiff, willfully intercepted or received interstate communication of the Event, or assisted in such. *Id.* at 3. After interception or reception, Defendant allegedly transmitted or otherwise divulged said communication to patrons within the Establishment, or assisted in so doing. *Id*.

Plaintiff claims to have suffered damages resulting from Defendant's unauthorized interception or receipt and subsequent transmission to patrons of the Establishment. Plaintiff claims Defendant willfully misappropriated the Event and infringed on Plaintiff's exclusive rights "while avoiding proper payment to Plaintiff." *Id.* at 3–4. In addition to damages prescribed by statute, Defendant, by allowing the Establishment's patrons to view the Event in an unauthorized way, allowed the patrons to avoid "view[ing] it at a commercial establishment . . . properly licensed and authorized by Plaintiff." *Id.* at 4.

## **PROCEDURAL HISTORY**

On May 2, 2017, Plaintiff filed its Original Complaint. Docket no. 1. Summons was issued and Plaintiff filed a return of service indicating that, on June 26, 2017, Defendant was duly served. Docket no. 5. Defendant failed to answer or otherwise defend. On July 24, 2017, Plaintiff was ordered to file a Motion for Entry of Default and Default Judgment by August 24, 2017. Docket No. 6. Plaintiff filed a Motion for Entry of Default and Default Judgment on

August 24, 2017. Docket no. 7, 8. On August 25, 2017, the clerk made entry of default. Docket no. 9. Now before the Court is Plaintiff's Motion for Default Judgment.

## STANDARD OF REVIEW

Rule 55(a) provides a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). However, "a movant is not entitled to a default judgment as a matter of right" even where the non-movant fails to plead or defend. *Bloom v. Memorial Hermann Hosp. Sys.*, 653 F. App'x 804, 805 (5th Cir. 2016) (per curiam) (citing *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). "[I]n considering any motion for default judgment, a court must examine jurisdiction, liability, and damages." *Labaty v. UWT, Inc.*, No. SA-13-CV-389-XR, 2016 WL 1737145, at *1 (W.D. Tex. May 2, 2016). The Court will address each in turn.

## LAW & ANALYSIS

**I.  Jurisdiction**

The Court has subject-matter jurisdiction over "Anti-Piracy" claims involving the Federal Communications Act of 1934 (the "Act"), pursuant to 47 U.S.C. §§ 553 and 605. The Court has personal jurisdiction over defendants personally served with process within the state in which this Court sits. *See Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 911 (W.D. Tex. 2015) ("[T]he Fifth Circuit has recognized, '[f]ederal courts may . . . always assume jurisdiction over a defendant in any action where there is personal, in-state service of process.'" (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 n.2 (5th Cir. 2006))). The Court finds it has subject-matter jurisdiction over this case.

Defendants may be served by personal delivery of service documents. *See* FED. R. CIV. P. 4(e). Pursuant to Federal Rules, the plaintiff must serve the summons and complaint on the

defendant within ninety days of filing the complaint. *See* FED. R. CIV. P. 4(m). Here, Plaintiff filed suit on May 2, 2017, and on June 26, 2017, Defendant was served a copy of the summons and complaint. Docket no. 5. Therefore, Defendant was properly served within ninety days of Plaintiff's filing of the complaint. The Court finds it has personal jurisdiction over the parties.

## II.     Liability

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although the Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); *see also* 10A Wright & Miller et al., FED. PRAC. & PROC. CIV. § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

Thus, prior to a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance[.]" *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

The Federal Rules of Civil Procedure require only a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2). In assessing the sufficiency of a claim, the standard is that the claims stated be *plausible*, and not merely *possible*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009) (recognizing *Twombly*'s abrogation of the *Conley* no-set-of-facts test for assessing the sufficiency of allegations in a complaint). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This assessment is context specific, and courts may rely on "judicial experience and common sense." *Id.* at 679. The purpose of this inquiry is to ensure the complaint "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

In this case, Plaintiff's Original Complaint relates to the piracy of radio and television communications under the Communications Act, as amended, 47 U.S.C. §§ 553 and 605.

**a. Sections 553 and 605 Distinguished**

The Act prohibits the "[u]nauthorized interception or receipt or assistance in intercepting or receiving [cable] service" communications. 47 U.S.C. § 553(a). "Cable service" is defined as a "one-way transmission to subscribers of (i) video programming, or (ii) other programming service," and any necessary interactions allowing subscribers access to such service. 47 U.S.C. § 522(6). The Fifth Circuit, as a matter of first impression in *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, joined the majority of circuits in holding the proscriptions of § 553 apply to interceptions or receipts of wire communications, and § 605 applies when radio communications are received or intercepted. *See* 751 F.3d 346, 352 (5th Cir. 2014) ("A logical reading of the two provisions reveals a clear demarcation whereby '[§] 605 deals with

5

communications traveling through the air (via radio), [and] § 553 covers communications traveling over cable wire.'" (quoting *Charter Commc'ns. Entm't I DST v. Burdulis*, 460 F.3d 168, 173 (1st Cir. 2006))).

Although Plaintiff's Original Complaint seeks damages under § 553 and § 605, it also expressly states "transmission of the Event originated via satellite . . . ." Docket no. 1 at 3. Thus, the Court will assess damages based on violations alleged under § 605.

### b. Plaintiff's Section 605 Claim

Unauthorized interception or receipt and subsequent dissemination of radio communications so intercepted or received is prohibited. *See* 47 U.S.C. § 605 (prohibiting not only unauthorized interception or receipt of radio communications but also "[u]nauthorized publication or use of communications" so acquired). Other than securing proper authorization, another exception exists. The prohibition on intercepting/receiving and disseminating (or assistance in so doing) radio communications does not apply if (1) the communications are not encrypted, and (2) a marketing system does not exist allowing individuals opportunity to obtain authorized access. *See id.* § 605(b). Plaintiff's Original Complaint alleges Defendant violated § 605 of the Act "willfully and with the express purpose and intent to secure a commercial advantage and private financial gain." Docket no. 1 at 4.

To establish Defendant's liability, it must be shown (1) the Event was disseminated without authorization in Defendant's Establishment; and (2) the exception to § 605 does not apply—i.e., that the Event was encrypted, and was available for Defendant's access by authorized means. Any willfulness of Defendant's conduct is relevant only to the issue of damages.

As to the first point, Plaintiff states Defendant never secured authorization nor made any payments to Plaintiff for the legal right to broadcast the Event as a sub-licensee. "Defendant misappropriated Plaintiff's licensed exhibition of the Event and infringed upon Plaintiff's exclusive rights while avoiding proper payment to Plaintiff." *Id.* at 3. On the date of the Event, an auditor hired by Plaintiff observed the Event broadcasted on sixteen regular and two big-screen televisions to approximately 250 patrons of Defendant's establishment. Docket no. 8 at 3. These facts form a substantive and sufficient basis for holding that the Event was intercepted or received by Defendant without authorization and subsequently disseminated to patrons of the Establishment.

As to the second point, Plaintiff alleges it is "the license company exclusively authorized to sub-license" the Event in Texas. Docket no. 1 at 2. As part of its licensing agreement, Plaintiff conducted marketing and sold access to commercial establishments that wished to broadcast the Event. Docket no. 1 at 3. The satellite communication of the Event was electronically encrypted. *Id.* These facts establish that the exception to a violation of § 605 does not exist in this case.

Plaintiff's factual allegations, admitted as true by Defendant's default, provide a sufficient basis for providing relief under the anti-piracy provisions of 47 U.S.C. § 605. For the reasons stated above, the Court concludes Plaintiff states a viable claim alleging violations of the Communications Act, sufficient to provide Defendant "fair notice" of what the claims are and the grounds upon which they rest. *See Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's well-pleaded allegations, taken as true, entitle Plaintiff to relief.

## III. Damages

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco*

*Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Damages awarded in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).

Usually, unliquidated damages are proven at a hearing. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (stating general rule that unliquidated damages in default judgment are not awarded without evidentiary hearing (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979))). However, where a mathematical calculation of unliquidated damages is possible with reference to adequately detailed affidavits, a hearing is not necessary. *Id.* The discretionary nature of whether to conduct a hearing is supported by the express language in the Federal Rules themselves. *See* FED. R. CIV. P. 55(b)(2) (emphasis added) ("The court *may* conduct hearings . . . when, to enter or effectuate a judgment, it needs to: . . . (B) determine the amount of damages[.]").

In this case, Plaintiff provided detailed affidavits in support of its damage claims on which the Court, in its discretion, may rely. Therefore, the Court finds an evidentiary hearing unnecessary to determine the amount of damages to which Plaintiff is entitled under its Communications Act claim.

Section 605 contains three damage provisions relevant to this case. First, statutory damages are prescribed "for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]" 47 U.S.C. § 605(e)(3)(C)(i)(II). Second, if violations were "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain" the Court may increase damages "whether actual or statutory, by an amount of not more than $100,000 for each violation of

subsection (a) of this section." 47 U.S.C. § 605(e)(3)(C)(ii). Finally, § 605 mandates the recovery of costs and attorney's fees to a prevailing plaintiff. 47 U.S.C. § 605(e)(3)(B)(iii).

    a. **Statutory Damages Under Section 605(e)(3)(C)(i)(II)**

Plaintiff seeks $10,000 in statutory damages premised on lost licensing fees, and compensation for being deprived of the value, benefits, and profits which may have been realized, but for Defendant's piracy of the Event. As Plaintiff notes in its brief, lost licensing fees are a mere baseline in assessing statutory damages. *See Entm't by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (explaining how damages of mere broadcast cost would not incentivize statute compliance). This Court has previously assessed damages by looking to the number of patrons present during the unauthorized broadcast. *See J&J Sports Prods., Inc. v. Tejada*, No. 5-13-CV-01020-XR, 2014 WL 869218, at *2 (W.D. Tex Mar. 4, 2014) (assessing baseline statutory damages using number of patrons established by affidavit). This "per-patron" approach is not uncommon to previous § 605 cases. *See, e.g.*, *Al-Waha Enters.*, 219 F. Supp. at 776 (stating "the per-patron approach is an appropriate starting point for calculating damages"). Here, Plaintiff submitted the affidavit of Mario Alejandro, an auditor who was present at the Establishment on the date of the Event, which states there were approximately 250 patrons present and viewing the Event on multiple screens. Docket no. 8, Ex. A-2. According to the submitted "Rate Card" (used to calculate sub-licensing fees based on venue capacity), a commercial establishment with a venue range of 201–250 would be charged $5,000 for the legal right to broadcast the Event. *Id.* at Ex. A-3. This Court has previously found trebling the amount a defendant would have been required to pay to legally license the event to be a just assessment of damages. *See, e.g.*, *Tejada*, 2014 WL 869218, at *2 (awarding "three times the amount of the legal sub-license fee"). This multiplier accounts for "money saved by not complying with the

law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight." *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (2008). In this case, a trebling of the $5,000 fee would exceed the $10,000 statutory limit. Accordingly, the Court awards damages in the maximum statutory amount of $10,000.

### b. Damages for Willfulness Under Section 605(e)(3)(C)(ii)

Defendant, by default, admits to violating § 605 "willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]" 47 U.S.C. § 605(e)(3)(C)(ii). Further, it strains reason to conceive of any way piracy of satellite transmissions could occur without willful intent; "there must have been some knowledge on the part of Defendant that such interception could not be had for free." *Kingvision Pay-Per-View, Ltd. v. Valles*, No. EP-00-CA-179-DB, 2001 WL 682205, at *3 (W.D. Tex. Mar. 30, 2001); *see also Time Warner Cable of N.Y. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y 1999) ("[T]here can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously[.]").

Although an award of additional damages for a willful act should be sufficient to deter such piracy in the future, the Court is mindful that such an award should not be so high as to drive the actor out of business. *See Tejada*, 2014 WL 869218, at *2 n.4; *see also Garcia*, 546 F. Supp. 2d at 386. This is especially so for what may—and hopefully will—be an isolated lapse in judgment. The Court finds damages for a willful violation in the amount of $15,000 appropriate based on the Establishment's approximated 250 patrons on the night of the Event.

### c. Recovery of Costs and Attorney's Fees

The Act mandates a prevailing plaintiff be awarded costs and attorney's fees. *See* 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff seeks a one-third attorney's fee contingent on the

recovery. Alternatively, Plaintiff seeks computation of damages using the *Lodestar*-fee method, which "is applied by multiplying the number of hours reasonably expended by an appropriate rate in the community for the work at issue." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002)). The *Lodestar*-fee method has a strong presumption of reasonableness. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1044 (5th Cir. 1999). The affidavit of David M. Diaz establishes an estimated total fee of $1,000, and is granted. The Court declines to award attorney's fees for potential post-trial and appellate services.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is GRANTED as to Plaintiff's 47 U.S.C. § 605 claim. The Court awards Plaintiff $25,000 in damages, plus $1,000 in attorney's fees, totaling $26,000. A separate judgment in favor of Plaintiff shall issue in accordance with Rule 58. Plaintiff is also entitled to costs, and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within fourteen (14) days of the entry of Judgment. *See* Local Rule 54.

It is so ORDERED.

SIGNED this 5th day of October, 2017.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE